UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS POPE,

    Plaintiff,

v.

SONATYPE, INC.,

    Defendant.

Case No. 5:15-cv-00956-RMW

**ORDER GRANTING MOTION TO COMPEL ARBITRATION WITH SEVERANCE OF UNCONSCIONABLE PROVISIONS; DISMISSING CASE**

Re: Dkt. No. 11

Defendant Sonatype, Inc. ("Sonatype") moves to compel arbitration of the 14 claims raised in plaintiff Thomas Pope's ("Pope") complaint. Dkt. No. 11 ("Mot."). The court grants the motion with severance of certain provisions.

**I. BACKGROUND**

Pope is a former employee of Sonatype. Pope filed a complaint on March 2, 2015 alleging 14 claims related to his employment with, and separation from, Sonatype.

Sonatype recruited Pope to work as a salesperson. Over the course of a few weeks, Pope and Sonatype engaged in negotiations over his salary. On February 7, 2013 Pope orally accepted a job offer from Sonatype. To confirm the offer, Sonatype extended a written offer of employment to Pope. Dkt. No. 11-1 ("Offer"). The Offer included an Arbitration Agreement. *Id.*

at page 4. The Arbitration Agreement provides:

> You [Pope] and the Company [Sonatype] agree to submit to mandatory binding arbitration of any and all claims arising out of or related to your employment with the Company and the termination thereof, including, but by no means limited to, claims of discrimination, harassment, unpaid wages, breach of contract, wrongful termination, torts, claims for stock or stock options or other ownership interest in the Company, as well as claims based upon any federal, state or local ordinance, statute, regulation or constitutional provision . . . . **All arbitration hearings shall be conducted in Washington, D.C.** Arbitration shall be the exclusive method by which to resolve Arbitrable Claims, except that **each party may at its, his or her option, seek injunctive relief in a court of competent jurisdiction related to the improper use, disclosure or misappropriation of a party's proprietary, confidential or trade secret information (or any related right)** . . . . THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO SUCH CLAIMS. This letter does not restrict your right to file administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict the employee's ability to file such claims (including, but not limited to, the National Labor Relations Board, the Equal Employment Opportunity Commission and the Department of Labor). However, the parties agree that, to the fullest extent permitted by law, arbitration shall be the exclusive remedy for the subject matter of such administrative claims**. The arbitration shall be conducted through JAMS before a single neutral arbitrator, in accordance with the JAMS employment arbitration rules then in effect.** The arbitrator shall issue a written decision that contains the essential findings and conclusions on which the decision is based. If any legal action, including, without limitation, an action for arbitration or injunctive relief, is brought relating to this letter or the breach or alleged breach thereof, **the prevailing party in any final judgment or arbitration award, shall be entitled to the full amount of all reasonable expenses, including all court costs, arbitration fees and actual attorneys' fees paid or incurred in good faith.**

*Id.* ("Arbitration Agreement") (bold emphases added). Pope signed the Offer the same day it was extended, and began working for Sonatype on March 4, 2013. Pope left Sonatype on October 17, 2014.

Pope's complaint is primarily based on claims that Sonatype misrepresented his potential compensation as a salesperson when recruiting him to join the company. Prior to Pope filing the instant complaint, Sonatype opened arbitration proceedings against Pope pursuant to the Arbitration Agreement relating to commissions and a severance package paid when Pope left

Sonatype.

Sonatype now moves to compel arbitration of Pope's 14 claims pursuant to the Arbitration Agreement.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements regarding transactions involving commerce, including employment agreements such as Pope's agreement with Sonatype. *See* 9 U.S.C. § 2. The FAA provides that any contract to settle a dispute by arbitration shall be valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects both that (a) arbitration is fundamentally a matter of contract, and (b) Congress expressed a "liberal federal policy favoring arbitration." *AT&T Mobility LLC* v. *Concepcion*, 131 S.Ct. 1740, 1745 (2011) (citation and internal quotation marks omitted).

"Under § 4 of the FAA, a district court must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue." *United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002). "Under California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid. California law utilizes a sliding scale to determine unconscionability." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citation omitted). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000).

## III. DISCUSSION

### A. Unconscionability

The court first examines whether the Arbitration Agreement as a whole is unconscionable. Pope, as the party opposing arbitration, has the burden of proving the agreement is

unconscionable. *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1099 (2002).

The California Supreme Court in *Armendariz* provides the definitive pronouncement of California law on unconscionability as applied to mandatory arbitration agreements. *See Ferguson v. Countrywide Credit Indus., Inc.,* 298 F .3d 778,782-83 (9th Cir. 2002). "In order to render a contract unenforceable under the doctrine of unconscionability, there must be both a procedural and substantive element of unconscionability." *Id.* at 783 (citing *Armendariz*, 24 Cal. 4th at 114). These two elements must both be present, but not necessarily in the same degree. *Id.* "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114.

### 1. Procedural Unconscionability

"Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at the time." *Kinney v. United Healthcare Servs.* Inc., 70 Cal. App. 4th 1322 (1999). The analysis focuses on two factors: oppression and surprise. Oppression arises from the inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms. *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997).

Here, the first notice of the Arbitration Agreement was in the Offer presented to Pope after he had accepted a verbal offer of employment. The Offer concluded with a statement that "This offer will remain open until February 9, 2013. . . Should you have anything else that you wish to discuss, please do not hesitate to call me." Dkt. No. 11-1. However, the Offer did not otherwise indicate that the terms of the Offer were negotiable nor did the parties discuss the Arbitration Agreement. Pope was not provided with the actual JAMS rules which were referred to in the Arbitration Agreement.

Sonatype argues that the negotiations with Pope over his salary show that Sonatype was

willing to negotiate the Arbitration Agreement. This argument is not persuasive because Pope did not know about the Arbitration Agreement until after he had orally accepted the job. Furthermore, job applicants, especially at Pope's level, typically negotiate salary and other employment benefits, such as vacation leave, title, stock options, etc. Arbitration is not a commonly negotiated employment "perk." Beyond the statement that Pope could contact Sonatype "to discuss" the offer, nothing in Sonatype's written employment Offer suggested that the unilaterally drafted Arbitration Agreement was negotiable or that Pope even knew about any arbitration provision until after he had accepted a verbal offer of employment. Although a close case, the court finds that the Arbitration Agreement does contain some degree of procedural unconscionability because of the manner in which it was presented to Pope. *See Trompeter v. Ally Fin., Inc.,* 914 F. Supp. 2d 1067, 1073 (N.D. Cal. 2012) ("Trompeter has established a minimal degree of procedural unconscionability based on the adhesive nature of the form arbitration agreement and the lack of opportunity for him to negotiate its terms.").

**2. Substantive Unconscionability**

"Substantive unconscionability focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Ferguson*, 298 F.3d at 784. The primary consideration is whether the agreement contains a "modicum of bilaterality." *Armendariz*, 24 Cal. 4th at 117. In *Armendariz* the California Supreme Court set forth five requirements that are applicable to arbitration agreements in an employment context. *Id.* at 100. At a minimum, an arbitration agreement must: (1) provide for neutral arbitrators, (2) provide for more than minimal discovery, (3) require a written award, (4) provide for all types of relief that would otherwise be available in court, and (5) not require the employee to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. *Id.* at 102-03. Pope argues that the Sonatype Arbitration Agreement does not meet two of the *Armendariz* requirements, because it (1) imposes unreasonable costs and (2) does not provide for more than minimal discovery. Pope also argues that the Arbitration Agreement is substantively

unconscionable because it is unilateral.

        a.   Unreasonable Costs

Pope argues that the Sonatype Arbitration Agreement requires him to pay unreasonable fees, including travel to Washington, D.C., costs of arbitration, and attorney's fees. Opp. at 4-5. Sonatype responds that the JAMS employment arbitration rules eliminate the risk that Pope will have to pay costs in violation of California law and that a venue selection clause is permissible in an arbitration agreement unless it has no justification other than maximizing an advantage over the opposing party. *See Arreguin v. Global Equity Lending, Inc.*, 2008 WL 4104340*8 (N.D. Cal. 2008); *Bolter v. Superior* Court, 87 Cal.App.4th 900, 910 (2001).

The Arbitration Agreement states that "the prevailing party in any final judgment or arbitration award, shall be entitled to the full amount of all reasonable expenses, including all court costs, arbitration fees and actual attorneys' fees paid or incurred in good faith." Sonatype concedes that this provision is inconsistent with California law but argues that the JAMS rules which are incorporated in the Arbitration Agreement negate this provision. The Arbitration Agreement provides that "[t]he arbitration shall be conducted through JAMS before a single neutral arbitrator, in accordance with the JAMS employment arbitration rules then in effect." The JAMS "Employment Arbitration Minimum Standards" currently in effect provide:

> **An employee's access to arbitration must not be precluded by the employee's inability to pay any costs or by the location of the arbitration.** The only fee that an employee may be required to pay is JAMS' Initial Case Management fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services. **In California, the arbitration provision may not require an employee who does not prevail to pay the fees and costs incurred by the opposing party.**

Dkt. No. 11-2 (emphases added). Thus, submits Sonatype, it is apparent from the Arbitration Agreement that Pope will not be subject to any unreasonable costs of arbitration or attorney's fees, even if he does not prevail in the arbitration. Although Sonatype currently agrees that the JAMS Minimum Standards apply, no evidence has been offered that at the time the Offer was presented

5:15-cv-00956-RMW
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISSING CASE
6

to Pope, Sonatype would have agreed that the JAMS Minimum Standard trump the express conflicting language in the Arbitration Agreement. However, the most logical interpretation of the Arbitration Agreement is that the JAMS provisions were intended to apply if a provision in the Arbitration Agreement conflicted with a JAMS requirement.

The most oppressive aspect of the Arbitration Agreement is its requirement that arbitration take place in Washington D.C. Pope, a California resident, was hired by Sonatype for a job in California and which he performed in California. To make such an employee who has a falling out with his employer go to his employer's choice of venue seems oppressive.

Sonatype suggests that Pope, and his witnesses, could present his case by either videoconference or through recorded depositions. The court is not convinced that appearing by videoconference is a cure-all. Even if Pope appeared by video or phone, Sonatype could appear in person, potentially giving Sonatype an advantage in the arbitration proceeding.

Sonatype indicated at the hearing on the motion that it would be willing to arbitrate the dispute in California if it could retain its right to arbitrate. Some courts have expressed reluctance to relieve a party of the effect of an unlawful provision it inserted in its arbitration policy despite the incorporation of, for example, the AAA rules that do not have the same infirmity. *See Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 721 (2004) ("NCR should not be relieved of the effect of an unlawful provision it inserted in the ACT policy due to the serendipity that the AAA rules provide otherwise"). However, as discussed below, the court finds this venue provision severable.

      b.   Discovery

Pope also argues that the Sonatype Arbitration Agreement, which incorporates JAMS rules, provides for only one deposition, which is insufficient to present his case. Opp. at 5. The Arbitration Agreement itself does not include any discovery limits, thus the JAMS rules apply. The JAMS rules provide as follows:

> Each Party may take **at least one deposition** of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location and duration of the deposition(s). Absent agreement, the Arbitrator shall determine

> these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and witness.

Dkt. No. 11-3 (JAMS Rule 17(b)). Pope's characterization of the rules as **limited** to one deposition is not accurate. The JAMS discovery limits are "more than minimal" and sufficient to meet *Armendariz*. *See also Chau v EMC Corp.*, 2014 WL 842579 at *5 (N.D. Cal. Feb. 28, 2014).

### c. The Arbitration Agreement is Minimally Unilateral

Pope also argues that the Arbitration Agreement is substantively unconscionable because employment disputes must be arbitrated but parties may seek injunctive relief "related to the improper use, disclosure or misappropriation of a party's proprietary, confidential or trade secret information (or any related right)" (hereinafter, "trade secret misappropriation"). Pope is correct that some California courts have found substantive unconscionability in arbitration provisions that require employment claims (which are more likely to be brought by an employee) to be arbitrated, but provide that trade secret misappropriation claims (which are more likely to be brought by an employer) can be litigated in court. *See, e.g., Fitz,* 118 Cal. App. 4th at 702. Here, the limited injunctive relief provision is mutual in that it allows either party to assert an injunctive relief claim based upon trade secret misappropriation against the other. It is unilateral, however, in the sense that the employer is more likely to assert such a claim than is the employee. Because there are no trade secret misappropriation claims in this case, the court finds that this provision should not bar enforcement of the Arbitration Agreement. *See Lara v. Onsite Health*, 896 F.Supp. 2d 831, 837 (N.D. Cal. 2012).

### B. Plaintiff's Tort Claims

Pope argues that the Arbitration Agreement does not apply to his "tort claims based on misrepresentations made to Plaintiff by Sonatype during the time that the company recruited him." Opp. at 13. This is not persuasive. The Arbitration Agreement expressly states that Pope agreed to arbitrate "any and all claims arising out of or related to your employment with the Company and the termination thereof, including, but by no means limited to . . . torts." Pre-employment

representations "relate to" Pope's employment with Sonatype. Pope's arguments do not address the terms of the Arbitration Agreement, but instead relate to the legal distinctions between different types of claims. Pope may be correct that he could have brought misrepresentation claims based on statements made before entering into an employment agreement with Sonatype even if he had not never actually worked for Sonatype, but by signing the employment agreement he agreed to arbitrate those claims. Accordingly, plaintiff's tort claims are covered by the Arbitration Agreement.

**C. Severance**

Sonatype submits that any unconscionable provisions in the Arbitration Agreement can be severed to preserve the intent of the parties. Pope argues that this is inappropriate, citing *Armendariz*.

California Civil Code § 1670.5(a) provides that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Comment 2 of the Legislative Committee comment on section 1670.5, incorporating the comments from the Uniform Commercial Code, states: "Under this section the court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability, **or it may strike any single clause or group of clauses which are so tainted** or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results." (Legis. Com. com., at 9 West's Ann. Civ. Code (1985 ed.) p. 494 (Legislative Committee comment) (emphasis added)).

As identified above, there are three provisions[1] in the Arbitration Agreement that contain some degree of unconscionability. "[A] court should sever an unconscionable provision unless the agreement is so 'permeated' by unconscionability that it cannot be cured by severance." *Serafin v.*

---

[1] The venue provision, the fee provision, and the trade secret misappropriation provision.

*Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 183-84 (2015).  Although some cases have found that including more than one unconscionable term suggests that the terms cannot be severed, that is not the case here.  *See, e.g, Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 398 (2010) ("At least two provisions were properly found to be substantively unconscionable, a circumstance considered by our Supreme Court to "permeate" the agreement with unconscionability." (citing *Armendariz*, 24 Cal. 4th at 122) (footnote omitted)).[2]

Here, it is clear that the primary intent of the the Arbitration Agreement was to arbitrate "any and all claims arising out of or related to your employment with the Company and the termination thereof" in accordance with JAMS rules.  The Arbitration Agreement itself provides that "The arbitration shall be conducted through JAMS before a single neutral arbitrator, in accordance with the JAMS employment arbitration rules then in effect."  Dkt. No. 11-1.  Although Sonatype inserted two clauses that appear to conflict with JAMS rules, simply severing those provisions or interpreting them as not applicable in California and proceeding under the incorporated JAMS rules cures the unconscionability as to those terms and preserves the intent of the Agreement.  Specifically, the JAMS rules provide that "[a]n employee's access to arbitration must not be precluded . . . by the location of the arbitration. . . In California, the arbitration provision may not require an employee who does not prevail to pay the fees and costs incurred by the opposing party."  Dkt. No. 11-2.  The injunctive relief clause does not have a JAMS counterpart, but it is also easily capable of severance.  *See, e.g., Arreguin v. Global Equity Lending, Inc.*, No. C07-06026 MHP, 2008 WL 4104340, at *8 (N.D. Cal. Sept. 2, 2008) (severing forum selection and non-mutual arbitration of claims provisions).

Accordingly, the (1) trade secret misappropriation injunctive relief carve-out, (2) the requirement that arbitration take place in Washington, D.C., and (3) the requirement that Pope pay attorney's fees unless he is a prevailing party are severed, and the motion to compel arbitration is

---

[2] The court in *Trivedi* nonetheless noted that "the trial court was free to sever the offending provisions."  189 Cal. App. 4th at 399.

1 GRANTED. Because defendants have established the existence of a valid arbitration agreement which encompasses the dispute in this case, the court dismisses the case without prejudice to proceed with the arbitration and without prejudice to an action confirming the arbitration award.

## IV. ORDER

For the reasons explained above, the court GRANTS the motion to compel arbitration. The applicable JAMS rules on venue and fees shall apply.  The court dismisses the case without prejudice to proceed with the arbitration and without prejudice to an action confirming the arbitration award.

**IT IS SO ORDERED**.

Dated: May 8, 2015

_Ronald M. Whyte_
Ronald M. Whyte
United States District Judge